FILED
2016 Sep-27  AM 09:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| STATE FARM LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) Case No.: 7:14-cv-00657-SGC |
| v. | ) ) |
| BARBARA TIDMORE and ROBIN INEZ WRIGHT, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, State Farm Life Insurance Company, commenced this action by filing a complaint for statutory interpleader against defendants, Barbara Tidmore and Robin Inez Wright. (Doc. 1). The complaint alleges Tidmore and Wright have competing claims to proceeds payable under a life insurance policy issued to their late mother, Annie Mae Williams. (Doc. 1 at 2). Because State Farm was unable to determine the proper primary beneficiary of the policy, it paid into court all policy proceeds and moved to be dismissed and discharged. (*Id.*; Doc. 16). The undersigned granted State Farm's motion on June 5, 2014. (Doc. 18). Presently pending is Wright's Motion for Summary Judgment. (Doc. 28). The motion has

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(b). (Doc. 13).

been fully briefed and is ripe for adjudication. (Docs. 29-34). As explained below, the motion is due to be denied.

## I.     BACKGROUND AND UNDISPUTED FACTS

Williams was born in 1925 and had at least four daughters: Robin Inez Wright, Pauline Lovett Hale, Betty Thomas, and Barbara Tidmore. (Doc. 1 at 20; Doc. 29 at 1-2). On September 2, 1995, Williams purchased life insurance from State Farm Insurance Company in the amount of $10,000, naming Wright as primary beneficiary and Hale as successor on September 4, 2007. (Doc. 1 at 4-12, 19). In January 2008, Williams saw Dr. Kamal Raisani, who diagnosed her with "dementia with mood disorder." (Doc. 30-1 at 27). In March 2008, Dr. Raisani diagnosed Williams with "dementia with depression." (Doc. 30-1 at 25).

On February 9, 2012, Hale filed a petition in the Probate Court of Sumter County, Alabama, seeking appointment of a guardian and conservator for her mother. Hale's petition alleged Williams was incapacitated due to dementia and other health problems. (Doc. 30-3 at 2-4). At the time Hale filed the petition, Williams lived in Livingston, Alabama on the same street as Tidmore. (*Id.* at 2-3). On February 16, 2012, the probate court appointed a guardian ad litem for Williams and set the petition for hearing on April 27, 2012. (Doc. 30-3 at 8). On February 24, 2012, the probate court issued orders appointing Dr. Gene Alldredge to perform an examination of Williams's condition and appointing the Sumter

2

County Department of Human Resources to evaluate Williams. (Doc. 30-3 at 6, 12). In an April 23, 2012 letter to the probate court, Dr. Alldredge noted Williams suffered from dementia but stated "as a general internist [he was] uncertain if she [was] competent to handle her financial affairs . . . ." (Doc. 30-2 at 26). Dr. Alldredge suggested psychiatric consultation or neuropsychological testing would be helpful in making a competency determination. (*Id.*). The briefs do not reflect whether the additional testing was ever completed.

On March 21, 2012, DHR visited Williams's home and interviewed her. (Doc. 30-3 at 14). Tidmore was also present. (*Id.*). Williams told the social worker that Tidmore managed her financial affairs and took care of her. (*Id.*). However, when the social worker interviewed Hale on March 22, 2017, Hale stated that "she manage[d] her mother's finances and [had been doing so] for quite some time." (*Id.* at 15). Based on its investigation, DHR recommended that the probate court appoint a guardian and conservator. (Doc. 30-3 at 16).

On the morning of April 27, 2012—the day of Williams's hearing—Tidmore and one of her sisters went with Williams to a State Farm office, where Williams executed a change of beneficiary form. (Doc. 30 at 10-11, 37). The form changed the primary beneficiary from Wright to Tidmore and changed the secondary beneficiary from Hale to Thomas. (Doc. 30 at 36-37). During her deposition in this matter, the State Farm agent who witnessed Williams execute the change of

beneficiary form testified that Tidmore "made the initial conversation" and "talked for her mother to some extent." (Doc. 30 at 13). Tidmore supplied the information regarding the new beneficiaries' names and ages. (Doc. 30 at 21).[2] The agent asked Williams if she wanted to execute the form, and Ms. Williams said "yes" before signing. (Doc. 30 at 13).

On July 12, 2012, the probate court appointed Hale as Williams's Guardian and Hiram Patrenos as Williams's Conservator. (Doc. 30-3 at 19, 21). Williams passed away on October 26, 2013. (Doc. 1 at 20).

During his deposition in this matter, Dr. Raisani—who initially diagnosed Williams with dementia, but had not seen her since 2008—testified, "hypothetically in dementia, it is progressive. However, when you change beneficiaries, it is generally not a very complex process." (Doc. 30-1 at 14). In contrast, Dr. Raisani noted "generally when people have dementia, they are more susceptible . . . to elements of coercion." (*Id.*). Dr. Raisani further noted that dementia patients' cognitive functions do not generally improve and their memory problems are more likely to persist, even with medication. (*Id.* at 16). Additionally, Dr. Raisani testified that, during one visit, Williams's family

---

[2] The change of beneficiary form is a fill-in-the-blank form. (Doc. 30 at 37). Aside from the beneficiaries' names, ages, and relationship to the insured, the only operative information is the method of settlement. (*Id.*). Here, the form includes a check-mark indicating that the proceeds should be paid in one sum. (*Id.*).

members reported she had entered into a service contract with DirecTV but she had no memory of signing the contract and no understanding of its terms. (*Id.* at 12).

During his deposition in this matter, Dr. Alldredge testified it was more likely than not that Williams's dementia would have worsened over the four-year period following her initial diagnosis. (Doc. 30-2 at 21). However, when asked whether it was probable that Williams was incompetent when he examined her on April 23, 2012, Dr. Alldredge stated he "was uncertain" and "didn't know." (Doc. 30-2 at 17). When pressed, Dr. Alldredge testified he thought "it was somewhat more likely that she was competent than incompetent." (*Id.*).

## II. STANDARD OF REVIEW

Under Rule 56(a) of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to "go beyond the pleadings" to establish that there

is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the plaintiff's favor when sufficient competent evidence supports the plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## III. DISCUSSION

Wright's Motion for Summary Judgment asserts two interrelated arguments. First, Wright argues Williams lacked the capacity to execute the change of beneficiary form. (Doc. 29 at 3). Next, Wright contends Williams executed the change of beneficiary form due to Tidmore's undue influence. (*Id*.). Each argument is addressed in turn.

### A. Lack of Capacity

Under Alabama law, if an insured executes a change of beneficiary form while "mentally incompetent, such attempted change is ineffective . . . and the original beneficiary has such a substantial interest as would justify an action to prevent or annul such a change." *Ex parte Estelle*, 982 So. 2d 1086, 1088-89 (Ala. 2007) (quoting *McRee v. Russell*, 194 So. 827, 828 (Ala. 1940)). A contract may not be avoided due to mental incapacity "unless it is shown that the incapacity was of such a character that, at the time of execution, 'the person had no reasonable perception or understanding of the nature and terms of the contract' or the incapacity was accompanied by, *inter alia*, undue influence." *Lloyd v. Jordan*, 544 So. 2d 957, 959 (Ala. 1989) (quoting *Williamson v. Matthews*, 379 So. 2d 1245, 1247 (Ala. 1980)) (citation omitted).

Here, Wright has introduced evidence that Willaims's mental state was in decline at the time she executed the change of beneficiary form on April 27, 2012.

7

In 2008, Dr. Raisani diagnosed Williams with dementia with mood disorder and dementia with depression. Dr. Raisani testified that dementia patients generally do not improve, even with medication. However, Dr. Raisani had not seen Williams since 2008 and did not express an opinion regarding her mental capacity on April 27, 2012.

In the months leading up to the change of beneficiary form, the guardianship proceedings were underway in Sumter County. In conjunction with those proceedings, Dr. Alldredge noted that Williams suffered from dementia and stated he was uncertain whether she was capable of handling her financial affairs. Dr. Alldredge suggested further specialized evaluation to determine Williams's capacity, but apparently that testing never occurred. Dr. Alldredge testified that it was more likely that Williams's dementia would have worsened during the four years between her diagnosis and the beneficiary change. However, Dr. Alldredge also testified it was more likely than not that Williams was competent to execute the change of beneficiary form. Of course, ultimately, on July 12, 2012—approximately two and a half months after the beneficiary change—the probate court appointed a guardian and a conservator for Williams.

The foregoing will make compelling trial evidence. However, drawing all factual inferences in favor of Tidmore, there are genuine issues of material fact regarding Williams's mental capacity. While the doctors that examined Williams

expressed doubts about her mental capacity, neither opined that she was incompetent at the time she executed the change of beneficiary form. Additionally, while Williams was ultimately declared incompetent in probate court, this decree came after the time in question. Accordingly, Wright's motion for summary judgment is due to be denied to the extent it alleges Williams lacked the capacity to execute the change of beneficiary form.

### B.  Undue Influence

Under Alabama law, a former beneficiary of a life insurance policy may assert a claim for undue influence regarding a change of beneficiary. *Ex parte Estelle*, 982 So. 2d at 1089-90. In the context of a will, the Alabama Supreme Court has held that a plaintiff claiming undue influence must demonstrate:

> (1) that a confidential relationship existed between a favored beneficiary and the testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) that there was undue activity on the part of the dominant party in procuring the execution of the will.

*Furrow v. Helton,* 13 So. 3d 350, 353-54 (Ala. 2008) (quoting *Clifton v. Clifton,* 529 So. 2d 980, 983 (Ala. 1988)). Moreover, where a plaintiff claiming undue influence presents substantial evidence in support of the required elements, Alabama common law "raises a presumption of undue influence and casts upon the beneficiary the burden of repelling such presumption when the transaction is assailed." *Wolfe v. Thompson,* 235 So. 2d 878, 882 (Ala. 1970). Where the

presumption attaches, the beneficiary must demonstrate the "transaction was fair, just, and equitable in every respect." *Id.* at 882-83.

As to the first requirement, the relationship between a parent and child is confidential. *Chandler v. Chandler,* 514 So. 2d 1307, 1308 (Ala. 1987). Additionally, Alabama courts have defined a "favored beneficiary" as "[o]ne who, in the circumstances of the particular case, has been favored over others having equal claim to the testator's bounty." *Pirtle v. Tucker,* 960 So. 2d 620, 629 (Ala. 2006) (quoting *Cook v. Morton*, 1 So. 2d 890, 892 (Ala. 1941)). Here, it is undisputed that Tidmore is a favored beneficiary and that she and Williams shared a confidential relationship.

As to the second and third requirements, a plaintiff claiming undue influence must show that the favored beneficiary was the dominant party who actively interfered in the execution of the document. As explained by the Alabama Supreme Court in the context of a will contest:

> "This activity must be in *procuring the execution* of the will and more than activity and interest referable to a compliance with or obedience to the voluntary and untrammeled directions of the testatrix." *Johnson v. Howard*, 21, 181 So. 2d 85, 90 (1965) (emphasis added).
>
> "Undue activity in the procurement or execution of a will may be proved by circumstantial evidence." *Pirtle,* 960 So. 2d at 631 (quoting *Allen v. Sconyers,* 669 So. 2d 113, 117 (Ala. 1995)). However, "a court does 'not look at individual facts or evidence in isolation in determining whether the evidence supports [this] element of undue influence.'" 960 So. 2d at 632. "Evidence proving that there was undue activity on the part of the named beneficiary in

10

procuring the execution of the will is *crucial* to the determination of the existence of undue influence." *Wall v. Hodges,* 465 So. 2d 359, 363 (Ala. 1984) (emphasis added).

>   Circumstances evidencing undue activity in the procurement or execution of a will are those where a beneficiary
>
> > was active in and about the execution and preparation of said will such as the initiation of the proceedings for the preparation of the will, or participation in such preparation, employing the draftsman, selecting the witnesses, excluding persons from the testatrix at or about the time of the execution of the will, concealing the making of the will after it was made, and the like....
>
> *Reed v. Shipp*, 308 So. 2d 705, 708 (1975) (quoting . . . *Lewis v. Martin*, 98 So. 635, 647 (1923).

*McGee v. McGee*, 91 So. 3d 659, 664–65 (Ala. 2012) (punctuation and parallel citations omitted; alterations incorporated).

 Here, the undisputed facts establish that Tidmore resided on the same street as Williams and kept her company.  There is a dispute concerning who handled Williams's finances during the time in question.  Williams told DHR that Tidmore handled her finances and took care of her.  However, Hale told DHR that she managed Williams's financial affairs and had done so for some time.  Accordingly, it is not clear whether Tidmore was the dominant party here.  It is also undisputed that Tidmore accompanied Williams to the State Farm office and provided the information necessary to complete the change of beneficiary form: (1) the names

and ages of the beneficiaries; (2) the beneficiaries' relationship to the insured; and (3) the method of payment.

Wright has not submitted direct evidence of undue influence in this case. Taken in the light most favorable to Tidmore, the circumstantial evidence establishes that Tidmore participated in completing the change of beneficiary form at a time when Williams's mental capacitiy was declining. However, in the circumstances of this case and under the summary judgment standard, this single piece of circumstantial evidence is insufficient to establish the presumption of undue influence. As with the issue of capacity, testimony and documents concerning undue influence will make compelling evidence at trial, particularly the timing of the relevant events. However, under the confines of Rule 56, Wright is not entitled to judgment as a matter of law.

## IV. CONCLUSION

Because there are genuine disputes of material fact regarding undue influence and Williams's capacity at the time she executed the change of beneficiary form, Wright's Motion for Summary Judgment is **DENIED**. A pretrial conference will be set by separate order.

**DONE** this 27th day of September, 2016.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE